May it please the Court, Armin Skamowski v. Petitioner, Harke Pioh, ask the Court to reserve two minutes for rebuttal. Petitioner, in this case, fears returning to Indonesia because of his past membership in the Moluccan Sovereignty Front, also known as FKM, and also because he fears harm due to his Christian religion. Because this case was filed prior to May 2005, this case is not a real-idea case. That's very important in this situation. He was deemed credible. He was deemed credible, yes. And the immigration judge and even government counsel, in her brief, they tried to make it sound like this person wasn't really a member, or he was a halfway member, or he was not the right race. The bottom line is he was credible, and he stated in his statement, as well as in his testimony, that he, as a member of this organization, he was placed on this blacklist, book of rebellion, as he calls it, that is in the hands of the Indonesian government. But did the immigration judges credit that, that there is such a list, and that he was targeted as a result? Well, he was found credible. And the judge could have said, well, I don't believe this. You're not credible. We're wiping this thing off. She did not say that. She doubted it. She asked him questions, well, how did you get on this list? I'm not sure. Are you on this list? Yes, I am. Who told you? People in my group told me. I was at the consulate demonstrating. You know, they knew about me. Counsel, what evidence is there? I realize if there's no adverse credibility determination, his statement that he thinks he's on such a list should be credited. But what evidence is there that the Indonesian government has such a black ball or rebellion list and acts upon it? Well, because in the record, Your Honor, it's clear that FKM members are being persecuted in Indonesia because of their membership in FKM. They're considered to be a separatist group in Indonesia. And it's not just them, but it's also the Papuan independence group that gets targeted. So because he made the statement, and it's unrefuted, that they have this list, that is the evidence that we have in the record. And the other evidence is the country condition reports which state that, and there are several sections that talk about FKM, raising the flag in front of Mr. Manaputi's house, arresting members because they're members of FKM. Indonesian government is arresting people that are part of this group. And he even states in his statement that in 2002, the group was banned by the government. So it's banned. They're being arrested. He is a member of this group. It's unrefuted, credible testimony. So for that reason, he's afraid to go back, and he says he will be arrested because of this membership in FKM. The IJ made a big point about the fact that Fio is not Moluccan, that he's in fact from Manado, which is in North Sulawesi. Right. And he used that fact to undermine his claim that he was actually part of the FKM. Yeah, I think the judge basically says I can't believe that someone that's not Moluccan would be part of this group. I mean, it's speculation running rampant. Basically, he says in his testimony that I'm a Christian. The Moluccans are majority Christian. Even the record says. That's what I was trying to ask prior counsel. So if you say you're Moluccan, does that somehow equate in the minds of people in Indonesia with also being a Christian? Yes. Actually, Moluccans have darker skin, first of all. They're actually, if you see Moluccan on the street, they can be identified as Moluccan. They have certain characteristics and features which separates them from the Indonesian population. And I can refer the court to the record. Page 119. Talks about Catholics concentrate in southeast Molucco province. Protestantism predominates in the central part of Molucco, north Molucco, and parts of central and north Sulawesi. Basically, almost the entire island of Molucco, which was the Spice Islands, that's the old name, is Christian. If you have this skin color, these characteristics, you're Moluccan, you're a Christian. You can be actually, you know, identified. They're us. He's saying, I'm Christian. I sympathize with my fellow Christians. I want to help them get their independence from this predominantly Muslim government which controls Indonesia. That's his rationale. That's why he becomes a member of FKM. So the judge saying, well, he's not Moluccan, therefore I cannot believe he would do this, is speculation. And no, nothing in the record would support that, especially given his credible testimony. Counsel, does it, does he meet, this is not an asylum case. It's just withholding. So he's got to show that it's more probable than not that he would be persecuted, I suppose. If I'm right in that, then my, the question on my mind is, does he meet his burden of showing a probability or likelihood of persecution simply by stating that he's on the blacklist? His contention is, I'm on this blacklist. The government wants to arrest me. He states this in the record. If I go back, I will be arrested by the government. So therefore, if he gets off the plane or gets through customs or whatever they have over there, he will be arrested. 51% chance of being arrested, absolutely. Credible testimony, nothing refutes that. Nothing in the record refutes that. He's a member. I go back. They arrest me. Why? I'm on this blacklist. It's been banned by the government. They will get me because they've gotten other members of this organization before, which is also in the record very clearly. So, yes, he meets his burden, absolutely. Okay. Thank you, Counsel. Unless there's something further, Your Honors, I will reserve some time. Okay. Why don't you take the remainder of your time as rebuttal? Good morning again, Your Honors. Jennifer Singer on behalf of the United States Attorney General, the Respondent in this matter. I'll start off with the petitioner's claim that he fears persecution in Indonesia for his participation in the FCAM. Well, Respondent made much that the immigration judge deemed the Respondent's testimony credible. Simply because the Respondent's testimony was deemed credible does not, therefore, mean that he met his burden of proof, which, as Your Honor mentioned earlier, is that under withholding of removal, which the petitioner is required to show that it is more likely than not that he will be persecuted, which is a higher standard of burden of proof than that for asylum. And even assuming, given that his testimony was credited, the petitioner still cannot meet his burden of proof to show that it is more likely than not that upon return to Indonesia he will be persecuted by the government for his participation in the FCAM. Is it more likely than not that he'll be arrested the minute he gets off the plane because he's on this blacklist of people that the government keeps who are participants in the FCAM? Your Honor, I would say the answer to that is no. First of all, even if he was arrested, arrest does not necessarily mean equal persecution. Persecution is a greater level of harm. Right. That's true. But if he's arrested solely on the basis that he's participating in this group, is the group considered illegal in Indonesia? The petitioner in his testimony at first stated that it was not illegal, that it was permissible to be a member of the FKM, and later in his testimony he said it was not legal to be a member of the FKM. The record evidence only shows that members of the FKM who engage in FKM activities in Indonesia are arrested and prosecuted for engaging in separatist activities and violent activities and not simple membership in the FKM. The record evidence doesn't show that it's more likely than not that he would be arrested upon return to Indonesia. The petitioner doesn't know anyone personally who has returned from the United States to Indonesia after participating in the FKM and has been arrested or persecuted. His knowledge of what happens to people in the FKM in Indonesia comes from things he's seen on television. Furthermore, the evidence doesn't show that the government of Indonesia would even know who his name is, let alone his participation in the FKM. His affiliation and his participation in the group is very limited and attenuated. Based upon his 10-minute participation in one demonstration and his attendance at one meeting doesn't show that the government even knows who he is, let alone that it would come to the attention of the government should he return to Indonesia. How do we deal with that issue, if I could ask a question? You argue that his participation doesn't show the government knows who he is, but he says with no adverse finding on credibility, they've got me on a blacklist. How do we deal with an issue like that? I may be able to help you a bit in the sense that I'm now reading the decision, which I hadn't focused on this before, but the immigration judge on page 49, if this is the pertinent part, says he believes that some friend told the petitioner that there's a book of rebellion, but the judge seems to be not finding that that book exists. The information is too scant for him to conclude that there is such a book and that people are really being arrested because they're recorded in that book or someplace else. Is that your reading of the judge's decision? It is, Your Honor. The petitioner's belief that he appears in this book was credited. The fact that the petitioner says he's never seen this book, he thinks it exists because his friend told him that it does. That belief was credited, but there's no evidence in the record to show that the book actually exists or that the Indonesian government would even have it to see his name on it. And that's simply not enough evidence to show that it's more likely than not that he would be persecuted. Perhaps we'll hear about this on rebuttal, but it says, accordingly given the respondent's whole understanding of this event comes from a very brief conversation with a friend who is also purported to be a member of the FKM USA, the court does not find that this testimony merits credence. It is not that the court is calling into question the respondent's credibility with respect to this information. Rather, the court finds that there is insufficient information provided to the respondent or through the respondent to the court for the court to conclude there's a real threat to the respondent as a result of his participation in the FKM here in the United States. So I, is the issue, and this isn't rhetorical from an itinerant district judge, you know, whether on the factual evidence a reasonable immigration judge would have had to have concluded the opposite? Based on, even if reasonable minds could differ on how the immigration judge viewed the testimony and the evidence, reasonable minds could differ. And the substantial evidence allows for an immigration judge to come to a different conclusion if substantial evidence supports that finding. And here, based upon the record and given that the petitioner is only eligible for withholding of removal, which is a higher burden, substantial evidence supports the immigration judge's finding that there simply is not enough evidence to show that the petitioner would be individually singled out for persecution based on his membership and participation in the FKM. And I'd briefly like to address the other issue regarding petitioner's claim that he fears returning to Indonesia based upon his Christianity. Again, since the administrative proceedings below concluded, this court came out with its decision in Tanpubilan, which the court held that Christians in Indonesia are a disfavored group. Again, the court's decision in Tanpubilan does not require remand here because the petitioner has not made a prima facie showing that he's eligible for relief under the disfavored group analysis. There's basically no evidence that the petitioner faces an individualized risk of harm should he return to Indonesia based upon his Christianity. He testified that nothing harmful has ever happened to him in the past in Indonesia based upon his Christianity. The petitioner's grandmother and cousins and aunts continue to reside there, and he provided no evidence that they have been targeted. The petitioner doesn't know anyone personally who has been targeted in Indonesia for harm based upon his Christianity. The petitioner's claim in this regard is basically a general undifferentiated claim of harm. There's nothing specific to him or special about him that would make him more at risk for suffering persecution than any other Christian in Indonesia. And if there's no further questions, then the government will rest. Thank you, Your Honor. Thank you. Thank you, Your Honor. Thank you. To address your issue, Judge, this Court has held that implicit credibility observations and passing do not constitute a credibility finding. The judge should have said, I do not believe that you are on this list. You are not credible. But I find you credible as a Christian and da-da-da. He said, I think the paragraph I just read is quite explicit. It says, I believe your friend told you this. But if this were in a United States district court, that would be hearsay. It would be inadmissible. He's saying, in effect, I don't find that that is reliable. It is not sufficient to prove that a list exists and that you're on it, and, therefore, you will be individually subject to persecution. Well, our contention is, is that that is not an explicit credibility finding. And the judge just says, well, I think, you know, so-and-so, I don't believe you were maybe possibly, you know, it's just him and my wife. That's not what he said. But even assuming that, Judge, the BIA assumed credibility. They said, we assume credibility. So that wipes out any kind of question that an immigration judge might have. He says right here, given that the Respondent's whole understanding of this event comes from a very brief conference with a conversation with a friend who is also purported to be a member of the FKM USA, the Court does not find that this terrorist testimony merits credence. Not that, and then he goes on to say, not because Mr. Pio invented, fabricated the conversation with the friend, but that it's not credible enough to establish that a book exists and that he's on it. Very nice. But then the judge goes on to say that. And then he goes on to say that the court is not calling into question the Respondent's  And then he goes on to say that she's not calling into question the page. It's the next sentence. It says it's on page 49 of the record. Correct. Right. So it is not that the Court is calling into question the Respondent's credibility. With respect to this information. Right. In other words, the information that his friend, I read it to say, said it. But anyway. Okay. You're addressing. He's found incredible. And that's the issue with this pre-Real ID Act case law is that this Court presumes that what he's saying is the truth. He is saying, and it's fact, I am on this list. I think the judge is saying I'd have to read the underlying record, which I haven't done. He says that his friend told him this list exists and he's on it. But that's not the same as saying I am persuaded that the list exists and he is, Mr. Piau, is on it. Right. But his statement in his declaration and what he says in testimony that I am on this list is fact. We can't get around that part. Credible fact, which must be presumed as the truth. So he gets off the plane. The government has this list. He's on the list. He'll be arrested. And there's no way around that one. Right. And the BIA actually even says, okay, you know what? We assume credibility on every facet. They don't say, oh, we think that maybe he's wrong on this one, wrong on this one. No, we assume credibility and we find that he doesn't have any future. I noticed that he has two sisters who have LPR status. What's that? Is that lawful permanent resident status? I believe he has some relatives, but they cannot petition him. No, no, I know that. That's not where I'm going. I'm just wondering on what basis, if you know, were they granted LPR status. I believe they married a United States citizen. They were adjusted. Adjusted, yes. Okay. And just briefly, you know, when he does say about, you know, the question was asked, well, you know, can FKM operate in Indonesia? And he kind of goes, yeah, well, I think they can. And he adds, well, how do you know that? Well, because they're getting arrested. So obviously they're around doing some activity, but they're being arrested. That was the second part of that exchange. So he's saying, you know what, yeah, they're there, and they're practicing, they're raising flags, but they're being arrested by the government. Because why? Because they're banned. And that's in the record. I mean, you can't get around that part. The judge, I believe, you know, once again, it's a pre-real ID act case. He didn't ask for corroboration. He didn't say, you know, someone should have said, who is your friend that said this? Maybe it was the leader that told him that. We don't know who the friend is. But what's fact is, is that he's on the list, according to the record, according to the law. I don't get educated in the law in the Ninth Circuit, but, I mean, even on the previous page, the judge says as an initial matter, the court doubts the respondent ever was a member of the FKM. And he explains why he doubts that. He's not finding that he's a member. Right. And I think these are all like an observation. She's saying, well, I think maybe I doubt this, and he's not the right race, and he's not this. You know, but she never says, you know, she could have said, you are not credible with FKM. That was the judge's error, I would say, on her part. In what case, this is not rhetorical, what case says that, you know, we shouldn't read the whole decision, but, you know, the fact that he failed, you say, to say he's credible, he is a member of the FKM, or he's not credible, he's not a member of the FKM. I think the Kaloubi case, Kaloubi, I think the Ashcroft, I believe. Kaloubi. Anyway, that's where the judge does not make an explicit finding. She says, you know. Counsel, I tend to agree with you. I think we have some precedents that require an explicit adverse credibility determination. However, what I'm still concerned about, in this case I'm thinking about, is that I don't think those cases address whether if someone is credibly, someone is credible and says something, but what they say is conclusory or speculative or hearsay, you know, whether that's sufficient to establish whatever they said and meet their burden. Well, I think Congress cured that problem with the Real ID Act. I think in this circuit, pre-Real ID, if you said something and that wasn't challenged, it was fact. Do you have a case that addresses the issue that Judge Wolf raised, basically the issue that the IJ raised in the testimony that Judge Wolf read, which I've also got here on an iPad, where the judge doesn't make an adverse credibility finding about Mr. Pio, but the judge says the particular statement that you're on this list was just told to you by somebody else and that is not worthy of credibility? Do you have a Ninth Circuit case that says that even in a situation like that, the statement has to be credited for purposes of our determination when there's no adverse credibility decision about the witness? Well, I guess there's one case recently, Cole v. Holder, a 2011 case, which I think goes back to the pre-Real ID Act standard, and at least as a practitioner in court, immigration judges, pre-Real ID Act cases, they would accept as the truth what someone says without any proof. Like, I am a Christian, and the judge doesn't say, well, where's your baptism certificate or where's this? If the judge accepts that, then you're a Christian, and that's a pre-Real ID Act factor. If it's post-Real ID Act, I mean, you've got to prove with corroboration or other witnesses. But pre-Real ID Act, if you said something and you were found to be credible, that was accepted as fact, as the truth. Nothing more needed to be said. And I believe all the cases cover that. And the last one, I think, was Cole v. Holder, which just reiterated that. But there's a whole string of cases. I believe Congress even overturned or, sorry, Congress brought in the Real ID Act because they were upset with Ninth Circuit case law, that it was so easy to say something that was considered to be the fact if you were found to be credible. So there's a plethora of cases. But I can just quote one off the top of my head now. Would you like to submit a couple of cases after the hearing, and we'll take a look at them? Sure. To support your argument. I mean, I'm aware of those cases, too. What I'm questioning is whether everything that's said is taken as true, or whether there was even pre-Real ID that the claim had to be plausible, specific, cogent. Yeah, I could do that, Judge. I mean, mainly what the immigration judge would do is they would find you not credible because it was not plausible. Or they would say you're not credible because you were vague, or you didn't explain well enough. The judge doesn't do this here. Is there an express credibility finding? There is no express credibility finding. When we have pre-Real ID Act cases where there's no express adverse credibility finding, then they're deemed credible by immigration law. Right. And that's where the Colubi case comes in, where the judge makes an implicit finding. Like, well, I think I may be the, you know, but doesn't say he is a liar or he's not credible. That wasn't good enough for adverse credibility. But here the judge, I understand all that as to the credibility of the witness or petitioner, but here the judge made an explicit statement that, although he wasn't saying that he didn't believe, you know, Mr. Pio, the particular statement that is in this book is just based on a passing hearsay reference, and that doesn't persuade him. He said that's not worthy of credence to use his language. So I guess I'd like to know if we have cases that say whether the judge can not make an adverse credibility finding about the witness but say that a particular part of the testimony, either because it's hearsay or speculative or some other defect, is not worthy of credence. Maybe the panel can figure out a way to frame an issue in a supplemental briefing order that we could let both of you opine on. Well, I saw a case, actually, that was, I think, published yesterday. I'm sorry. Excuse me. An unpublished decision. I think Zinn or Zwan v. Holder. In that decision, the court said, you know, he had two issues. One was sterilization. One was Christianity. The judge found that the sterilization was not credible but found that he was a credible Christian. So the court remanded because the judge did find one part of it as credible. So, yes, the judge could have said, in this case, could have said, we find him not credible on his FKM story. It doesn't make sense. He doesn't know what's going on. He's not credible. I think the judge did say that, but you're way over your time. Way over your time. Thank you, Justice Breyer. And you can each side submit a supplemental letter brief on this a week from today, and we'll hold the decision. I think that you understand the issue that we're concerned about. Tell me if you don't because we could also put it in writing. That would be better, but I understand you explicitly. All right, we'll do a supplemental briefing order, and then we'll give you a specific date in which to file your supplemental briefing. Thank you, Judge. Appreciate it.  Thank you.
judges: Wolf, Wardlaw, Gould